May it please the Court, my name is Thomas Murtha. I represent the appellant Donovan White Owl. This appeal turns on a straightforward procedural error at sentencing. Mr. White Owl pled guilty to voluntary manslaughter. The advisory guidelines range was 87 to 108 months. The district court, however, imposed 180 months, the statutory maximum. That sentence was driven by two key findings by the district court, that Mr. White Owl lit the fire and that he intended to kill his wife. But Mr. White Owl expressly disputed those allegations and the district court never resolved the disputes as Rule 32 requires. Under Federal Rule of Criminal Procedure 32i3b, when a defendant disputes a factual allegation, the court must either, one, find the allegation true by a preponderance of the evidence, or two, state that it will not rely on the allegation. Were those two factual allegations in the pre-sentence report? They were. Where were they? What are you referring to? I don't have the pre-sentence investigation report in front of me right now, but the allegation that he lit the fire and intended to kill his wife was Didn't he plead guilty to lighting the fire? No. He pled guilty to voluntary manslaughter. Meaning in the colloquy, though, or in the factual basis? No. If you read the factual basis, he did not plead guilty to actually lighting the fire and expressly denied that. That was one of the issues that came up with the pre-sentence investigation report and the acceptance of responsibility. He was specifically denying the act of lighting the fire or threatening to kill his wife or intending to kill his  He always said he poured gasoline throughout the building, though, right? He always said that. Yeah. Yeah. So there was never And he always said he was the last one there, right? He agreed he was the last person there? He did not agree Well, did he all but agree to it? Tell me your version, of course. Okay. The argument I have, we're not disputing the facts. We're disputing that the district court didn't follow Rule 32. Mr. Whiteow expressedly objected to the facts outside of those that were presented at trial, and that's where the he intended to kill his wife and that he lit the fire came from. Because he made that objection, Rule 32 basically required the district court to do something. I mean, he made the objection. The objection was overruled, but then the district court never made a finding by the preponderance that any of that was true. So your objection is not to the pre-sentence report? Because I'm looking at the objections that you filed to the pre-sentence report. It's not there. You're saying you had a freestanding objection at sentencing to say I'm not admitting to anything beyond the elements of voluntary manslaughter? Yes. Is that the distinction? It is. We made the objection when the pre-sentence report came out. We made the objection, then we made the objection again in our sentencing memorandum, and then tried to explain the sentencing hearing. The point was that a lot of what Mr. Whiteowl was having difficulty with was the allegation that he lit the fire and that he threatened to kill his wife, and he denied those things. But the judge had heard the evidence at trial, right? Yes. So was he not permitted to make findings based on the evidence he'd heard? Yes. But none of that came out at trial. Well, but wasn't the judge making an inference from the evidence at trial that the defendant had a certain intent? I would have to assume so, but if that's going to be a finding that wasn't explicitly found at trial, I mean, the judge should have followed Rule 32 and did that. What does Rule 32 require beyond him making a finding that the defendant intended to kill the wife or that the defendant started the fire? I mean, you could argue that finding is clearly erroneous. That's not — that would be a separate argument. But he has to make — What's your procedural? Go ahead. Yeah. I believe that Rule 32 would require the judge to make that finding and say, I find by a preponderance of the evidence, or somehow explain that in answering the objection. And in this case, Mr. Whiteowl was very specific that he was objecting to that finding and that information that was outside of what came in at trial, specifically. And one of the issues that has reappeared in this — and this is the third appeal we've had now — are those statements that — the hearsay statements that he allegedly said these things that didn't come in at trial. The judge says, I heard enough of the evidence to conclude that essentially Whiteowl committed what is essentially a felony murder. He lit a house on fire, which is a felony, and he killed Winifred Smith. That's a murder. Are you objecting to that? Is that your — Lit the house on fire. Well, I just don't — I guess what I'm not understanding is why that isn't just a finding of fact that was properly made, and then if you wish to challenge it, you would argue that it's not permitted to make that finding at all, I mean, regardless of the evidence. Okay. I think that takes my argument too far. I'm not — I'm arguing Rule 32. I'm not saying that the Court can't make the finding. The Court obviously has to make the finding. I'm arguing that the way it was done was improper because Mr. Whiteowl objected and that if he's going to make the finding, then he has to say — the judge has to say what that finding is, and then we'd have an opportunity at that point to say that that was not supported or clearly erroneous, and we'd attack it that way. But that's not what the judge did. So — Do you think it's a Rule 32 violation? Is that what you're arguing today? Yes. Now, Rule — I just looked. I don't think Rule 32 is even mentioned in your brief. Okay. So we argue procedural error in the initial brief and then the government's brief, and then we address the government's questions regarding procedural error by pointing out Rule 32. And the cases we cite basically refer to Rule 32. It's embodied in those. Are you saying it would have been okay if the judge had said, I now find by a preponderance of the evidence that he lit a house on fire? And then we would object to that and go after it, yes. So you're just objecting to the fact that he didn't specifically say he was using the preponderance standard? Or any standard, or how he was making that finding, because as we — as I argue in the brief, that finding is not supported. There's — and in fact, the judge at trial even made reference to that, that there's no connection between Mr. Whitehall and the ignition. That's why the government wanted to call Mr. Lovejoy. But Mr. Lovejoy never testified, and a mistrial was declared. So we're asking that this Court vacate and remand for resentencing. I'm reserving the balance of my time. Judge Kelly had a question. Did you have a question? You may reserve. Thank you. Thank you, Your Honor. Ms. Healy, we'll hear from you. Good morning. May it please the Court? My name is Megan Healy on behalf of the United States. The district court imposed a procedurally and substantively sound sentence that comported with the Sixth Amendment and the record supported the denial of acceptance of responsibility. I'd like to turn to a few things that have come up during appellant's argument. First of all, starting with the Rule 32 argument, this was raised for the first time in the reply brief, and it has therefore been waived for not being raised in the opening brief. The opening brief focused on the merits of the denial of acceptance of responsibility and otherwise raised a substantive reasonableness argument based on clearly erroneous facts that I construed as a procedural argument. As to the merits of a Rule 32 argument, the objection that was raised here was vague and nonspecific. It addressed only, it's, he objected that to the extent that the evidence conflicted with the trial evidence. But what was the evidence, I'm assuming the district court is, when it says, I'm considering the entire file, it's considering the trial record as well. What was the evidence that was presented at that point in trial, I know it got stopped sort of halfway, that Mr. Weidaul intended to kill his wife? So here is a summary of the trial evidence. And in my brief on the bottom of page 48 and on page 49, I parsed out where each of his statements are in the record, in the trial record and in the suppression record. But this is the trial record. A witness testified that Mr. Weidaul had recently threatened to kill his wife because he thought she was cheating. Then the night of, that was shortly before the fire, the night of the fire, his wife, he and his wife got into a heated argument. His wife went and hid behind the third row of their SUV because Mr. Weidaul was very angry and she didn't come out because she didn't want to continue having an argument due to his anger. He was driving, he got into the SUV, was driving around this fairly large property, hollering around for his wife, being very angry. At some point, they stopped back at the cabin where they had been living for the last few weeks and the cabin that was ultimately burned. Mr. Weidaul, in his interview with law enforcement, admitted that he was at the location that the certified fire investigator determined was the point of origin of the fire, at the top of the basement stairs where he was banging on the door. The certified fire investigator determined that the fire was incendiary and it was caused by ignition of gas vapors by open flame. Forensic evidence showed that Mr. Weidaul did have gas on his boots. Next, Mr. Weidaul then got back into the car. The timing of this is after midnight and the timing of when he was in the house is consistent with the approximate time that the fire started. He got back in the car and drove from the scene overnight, not knowing that his wife was in the back of the vehicle, drove to Montana, to Circle, Montana, which I believe is about 150 miles away from the cabin in Mandory. That morning, at a convenience station, his wife finally emerged from the car and he was very surprised to see her. He had no idea that she was there. His conduct over the next few days reflected a consciousness of guilt, as did the flight from the scene. And is the consciousness of guilt, does that include the intent to kill her? I know you've talked about threats. Is there anything else that happened after that, that testimony or evidence that came into trial independent of the threats that indicated a specific intent to kill her? So the intent to kill his wife, aside from drawing an inference from the flight and going to the home where they had been living, more specifically comes out in the record of the case in the suppression proceedings. In both his wife's testimony, or excuse me, she did not testify in his wife's interviews with law enforcement, which were exhibits, both the recordings and the transcript, or excuse me, FBI reports, that were introduced at the suppression proceedings and led to litigation. But what are those statements? Because I'm not sure that those specific statements are referenced in the briefing. They were referenced as general statements at the suppression hearing. Her statements were the subject of the first interlocutory appeal here. They're also summarized in paragraphs 7 and 8 of the PSR. But the statements are that Mr. Whitehall admitted to his wife that he poured gasoline around the house and that he did it because he thought she was in the house. Those are the statements from the record, not from the PSR, but that are in the record that allowed the district court to make that assessment. And also, the district court presided over the suppression hearings, and he also was able to see Mr. Whitehall's wife testify at trial and make an assessment as to her credibility and as the distinction between the statements. She didn't go all the way at trial to acknowledge those statements. And I've been assuming this, I should ask. Was it the same judge at all times, the interlocutory appeal, the mistrial or whatever, and this appeal? Same judge all the time? Yes, Your Honor. Thank you. It was the same judge from the beginning. I'd also like to point out that with respect to, there was some discussion with respect to the district court's pronouncement at sentence about that Mr. Whitehall lit a fire. The summary of the testimony that I provided a few moments ago supports the inference that Mr. Whitehall did light the fire, provides a strong basis for the district court to make that conclusion. And also the fact that he pleaded guilty to voluntary manslaughter. The victim here, Winifred Smith, died of smoke inhalation, but for the fire, she would not have died. It's embedded within the guilty plea, which has not been challenged. And also, at the end of the proceedings, after the district court laid out its pronouncement and its reasons of sentencing, Mr. Whitehall didn't object to the district court's reasons or to the basis for those reasons. I have a question about the acceptance of responsibility issue that's been raised. As I understand it, Mr. Whitehall objected to the denial of an acceptance of responsibility reduction and objected to the characterization of his interview with the probation office. Once that it was objected to, it kind of kicks in the government's obligation to put on evidence. How did that work? It sounds like it was just a probation. The probation officer just sort of reiterated to the court in the courtroom. Was she put under oath as a witness to testify to what he had told her in that particular interview? She was not. The judge just asked her questions in the portion where they were resolving the acceptance of responsibility reduction or with respect to his objection to that reduction. And was there any objection to that as not being the proper form of evidence to come in to actually counter an objection? There was not. No, Your Honor. And also, with respect to the objection that was made, a reference at the outset, that the objection was simply made to the extent it conflicted with the evidence at trial, but it did not specify what facts in the paragraphs 4 through 9 that the defendant had any objection to. And that kind of summary objection was made again in the sentencing memo. So we get to the sentencing itself, and the district court doesn't know what the objection is. So he asks counsel, what is the particular concern? And counsel's statement is that because there was no objection to specific facts, counsel's statement was that this related to the acceptance of responsibility reduction. In his objection, he does say that those paragraphs mischaracterized his statements to the probation office. So he's saying, no, you got, as I read that, he's saying, no, you got it wrong. You didn't hear exactly what I was saying, and you've written it down improperly. That is true, but the district court asks specifically, what is the concern? And he didn't identify — there's the paragraphs 4 through 9 as an extensive recitation of facts from the case. There's no identification of what fact in there was a problem. And, in fact, until the reply brief on appeal, what the actual facts were that he was objecting to wasn't parsed out. And so, just as simply, we object to the PSR because it doesn't align with trial evidence, is the kind of vague, nonspecific objection that does not invoke the district court's obligation to make any findings of fact, that the district court was well within its right to rely on the presentence report. But beyond that, all the facts that the district court considered for the offense conduct in its pronouncement of sentence had another basis in the record, not only the PSR, in the actual record of the trial and of the suppression proceedings. If the Court has no further questions for me, we respectfully ask to affirm in this case. Thank you very much. I have a question. Why are the briefs filed under seal? We quoted the PSR and the, both Mr. Murtha and I quoted the PSR for obvious reasons. And we were both directed to redact everything from the PSR and to file the briefs under seal and to file a redacted version for the public record. So it's because it quotes from the PSR. Who directed you to file it under seal? The clerk's office issued a brief deficiency to both Mr. Murtha and me. And I did go back to the clerk's office for clarity because this was not how I have generally proceeded in these cases. And we were told that this was the way going forward. And so we obviously want to comply with anything we're told to. I wonder if there was some confusion. I mean, we had a lot of briefs that referred to the pre-sentence reports. Yes, and that had been, in my time in the U.S. Attorney's Office, how Mr. Murtha and I both did our briefs was how we, especially when we're quoting offense conduct, is the normal course of business. Thank you. We'll hear rebuttal. Thank you. If you look at the sentencing memorandum that the defendant provided, it states the PSR relies on discovery provided by the prosecution in lieu of evidence presented at trial. Mr. Whiteau objects to the facts presented in the PSIR used to establish the offense conduct and argues that the court should disregard the same and instead rely on the evidence received at trial and Mr. Whiteau's guilty plea. And that was the gist of that objection was that not to rely on it at all, to limit what was being, what was presented at trial, and that if there was something that was going to go beyond that, then it would be presented separately. Because that's why we made the objection, because specifically, you know, the first appeal was talking about the evidence that Mr. Whiteau claiming that he did not light that fire. And that's what he was trying to get across. And we, I mean, kept hammering at it and we're still hammering at it. But the way this should have happened was if the court was going to use the evidence that came from somewhere else, then we should have addressed that. Because our objection was we want to limit it to what his guilty plea was and the factual basis he provided in his guilty plea and what happened at trial. We're asking the court to vacate and remand for sentencing. I believe my time's over. Very well. Thank you for your argument. Thank you to both counsel. The case is submitted and the court will file a decision in due course. Thank you. Counsel.